**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NIRIN WALLS, #R49110, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:21-cv-00742-NJR |
| | ) | |
| MICHAEL BEDNARZ, | ) | |
| VENERIO SANTOS, | ) | |
| LANA NALEWAJKA, | ) | |
| LIEUTENANT GROTTE, | ) | |
| HODGE, | ) | |
| HANK, | ) | |
| KOURTNEY HALLMEYER, | ) | |
| TERRY DEAN, | ) | |
| BRENNAN, and | ) | |
| RN SARAH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Nirin Walls, an inmate in the custody of the Illinois Department of

Corrections, filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his

constitutional rights at Centralia Correctional Center ("Centralia"). The Complaint is now

before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the

Court to screen prisoner Complaints to filter out non-meritorious claims. 28 U.S.C.

§ 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a

claim for relief, or requests money damages from an immune defendant must be

dismissed. 28 U.S.C. § 1915A(b).

1

## THE COMPLAINT

Walls makes the following allegations in the Complaint (Doc. 1): Walls was diagnosed with schizophrenia as a child and has seizures that can be prevented by prescription medication. When he was evaluated at Galesburg Correctional Center in October 2018, he was prescribed Depakote to be administered daily by a nurse. After his transfer to Centralia, Walls was evaluated by Dr. Venerio Santos, and his prescription medication was changed from Depakote to Dilantin. He was given a thirty-day supply of Dilantin to be administered on his own. He objected to the change in his medication, told Dr. Santos he preferred Depakote, and expressed concern that he would not take his medication daily due to his lack of focus. Dr. Santos ignored his concerns.

At the time Dr. Santos changed Walls's prescription medication, he had not suffered a seizure in over a year. While on Dilantin, he began having seizures in September 2019. Blood work showed a low level of Dilantin in his system, but Dr. Santos refused to order that his medication be administered by a nurse. He had seizures in November 2019 and February 2020. After each seizure, he expressed his concerns to Dr. Santos that the Dilantin was not working as well as the Depokate and he was not mentally stable enough to take medication on his own. He requested that his medication be administered by a nurse. Dr. Santos ignored his requests.

In April 2020, Walls suffered three or four seizures. At that time, he did not have a cellmate and had been without his medication for approximately ten days. Prior to having the seizure, Walls told Nurses Terry Dean and Sarah that he was out of his anti-seizure prescription medication. Neither nurse took any action to assure that Walls

received his medication or to alert security that he needed a cellmate. During the time that Walls did not have a cellmate, he suffered three or four seizures and was unable to summon anyone for help. He laid on the cell floor for hours before he was able to alert prison officials. Correctional Officer ("C/O") Hodge did not conduct rounds every thirty minutes. Walls told Dr. Santos that he needed a cellmate or an accommodation pursuant to the Americans with Disabilities Act (a personal inmate assigned to him), but Dr. Santos refused. He was without a cellmate for 78 days.

On one occasion, Walls notified C/O Hodge after he suffered a seizure that he had fallen and hurt his head, neck, and back. C/O Hodge summoned Lieutenant Grotte and medical staff. When Lieutenant Grotte and Nurse Brennan arrived, Walls told them that he had a seizure, fell, and hurt his head, neck, and back. He also told them he was unable to feel his legs or walk. Nurse Brennan instructed Lieutenant Grotte and C/O Hodge to place Walls in a wheelchair without applying a neck brace or taking any other precautions for his injuries. On their first attempt, they dropped him, and he hit his head on the toilet. He was then dragged out of his cell and placed in a wheelchair.

Walls was admitted to the healthcare unit ("HCU") and placed on a 23-hour watch, but he was not given any anti-seizure medication. The following day, Nurse Kourtney Hallmeyer told him he was discharged from the HCU and would be returned to general population after his blood was drawn for labs. He did not see a doctor during the 23-hour watch about the seizure or his injuries. X-rays taken a year later revealed an injury to his head that went untreated.

After he returned to general population, he had a teleconference with a

3

psychiatrist, Dr. Bednarz, to discuss his recent seizure. Dr. Bednarz assured Walls that Dr. Santos would address the medication issue. Shortly thereafter, Walls saw Dr. Santos, and his anti-seizure medication was ordered to be administered by a nurse.

During the time Walls was required to take his anti-seizure medication on his own, he refused his Haldol medication so that he could try to focus enough to remember to take his anti-seizure medication. However, Dr. Bednarz forced him to continue taking the Haldol. Dr. Bednarz lied to him and told him the Haldol was court ordered. Dr. Bednarz also threatened to send Walls to Dixon STC if he refused his Haldol shot. The actions of Dr. Bednarz constituted an involuntary administration of a psychotropic medication. Also, Dr. Bednarz could have intervened and made sure Walls's anti-seizure medication was administered by a nurse but failed to do so. He filed a grievance against Dr. Bednarz that was partially upheld.

Additionally, while Walls was required to administer his medication himself, there were at least four occasions when he was without his medication. In November 2019, he went 10 days without medication; in December 2019, he went 8 days without medication; in February 2020, he went 20 days without medication; and in April 2020, he went 10 days without medication. On one occasion in February 2020, C/O John Doe refused his request for medical care because it was "night shift." Nurse Hank was responsible for providing Walls with his medication every 30 days. Healthcare Unit Administrator ("HCUA") Lang Nalewajka should have been renewing his medication every 30 days. The month of March was not signed by a nurse or doctor, and HCUA Nalewajka should have noticed this and checked on it.

4

<u>**PRELIMINARY DISMISSALS**</u>

Walls refers to C/O John Doe in his statement of claim, but this individual is not named as a defendant. Federal Rule of Civil Procedure 10(a) requires the names of all parties to be included in the case caption. Because C/O John Doe is not identified as a defendant in the case caption, Walls fails to state a claim against him, and he is dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding *pro se* Complaint failed to state a claim against individual mentioned in body of Complaint but not specified in the caption).

Walls seeks injunctive relief in the form of an order that he receive proper medical care and time off his sentence. Walls is no longer incarcerated at Centralia, where the events giving rise to this action occurred, and thus, any request for injunctive relief is moot. *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."). Additionally, release from confinement is not an available remedy in a Section 1983 action. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that the sole federal remedy for a state prisoner who is challenging the fact or duration of his physical confinement and seeking immediate or speedier release from imprisonment is a writ of habeas corpus). Accordingly, Walls's request for injunctive relief is dismissed.

<u>**DISCUSSION**</u>

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1:    **Eighth Amendment claim against Dr. Bednarz, Dr. Santos, HCUA Nalewajka, C/O Hodge, Nurse Hank, Nurse Hallmeyer, Nurse Dean, and Nurse Sarah for exhibiting deliberate indifference to Walls's serious medical needs related to his schizophrenia and seizure disorder.**

Count 2:    **Eighth Amendment claim against C/O Hodge, Lieutenant Grotte, and Nurse Brennan for exhibiting deliberate indifference to Walls's serious medical needs related to his injuries when he fell during a seizure.**

Count 3:    **Fourteenth Amendment claim against Dr. Bednarz for the involuntary administration of an antipsychotic drug.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### Counts 1 and 2

Prison staff and medical providers violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* At this stage, the allegations in the Complaint are sufficient to proceed against Defendants Dr. Bednarz, Dr. Santos, HCUA Nalewajka,

6

Nurse Hank, Nurse Hallmeyer, Nurse Dean, and Nurse Sarah on the deliberate indifference claim in Count 1 and C/O Hodge, Lieutenant Grotte, and Nurse Brennan on the deliberate indifference claim in Count 2.

The allegations in the Complaint fail to state a claim, however, against C/O Hodge as to Count 1. Walls alleges that during the time he was single-celled, C/O Hodge did not conduct rounds every thirty minutes. There is no basis to conclude that C/O Hodge's failure to conduct rounds every thirty minutes reflects deliberate indifference to Walls's seizures. There are no allegations to suggest that C/O Hodge knew that Walls was at serious risk of suffering a seizure during the time he was conducting rounds and decided not to do anything to prevent that harm from occurring. In other words, there are no allegations to suggest that C/O Hodge knew that his failure to complete rounds in a timely fashion would result in Walls suffering injuries from a seizure. As such, C/O Hodge will be dismissed from the claim in Count 1.

### Count 3

In *Washington v. Harper,* the Supreme Court held that a prisoner has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." 494 U.S. 210, 221–22 (1990). However, the "Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227; *see also Fuller v. Dillon,* 236 F.3d 876, 881–82 (7th Cir. 2001); *Sullivan v. Flannigan,* 8 F.3d 591 (7th Cir. 1993) (finding that decision to keep prisoner on Haldol against his will complied with due

process requirements under *Harper*). At this stage, the allegations in the Complaint are sufficient to proceed against Dr. Bednarz on the due process claim in Count 3.

### MOTION FOR COUNSEL

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). A district court considering an indigent plaintiff's request for counsel must first consider whether the plaintiff has made reasonable attempts to secure counsel on his own or been effectively precluded from doing so; and, if so, whether the difficulty of the case factually and legally exceeds his capacity as a layperson to present it. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). The first prong of the analysis is a threshold question. If a plaintiff has not made a reasonable attempt to obtain counsel on his own, the court should deny the request. *Id.* at 655.

Here, Walls has not demonstrated a reasonable effort to obtain counsel on his own. (Docs. 3, 8). As such, his Motions for Recruitment of Counsel are denied. If Walls encounters difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he chooses to renew his request, he should submit rejection letters from at least three attorneys to demonstrate that he has made reasonable efforts to obtain counsel on his own.

### DISPOSITION

**COUNT 1** will proceed against **MICHAEL BEDNARZ, VENERIO SANTOS, LANE NALEWAJKA, HANK, KOURTNEY HALLMEYER, TERRY DEAN,** and **RN SARAH,** but is **DISMISSED without prejudice** as to **HODGE. COUNT 2** will proceed

8

against **HODGE, LIEUTENANT GROTTE,** and **BRENNAN**. **COUNT 3** will proceed against **MICHAEL BEDNARZ**. The injunctive relief claim is **DISMISSED without prejudice**.

Plaintiff's motions for recruitment of counsel (Docs 3, 8) are **DENIED without prejudice**.

The Clerk of Court shall prepare for Defendants **MICHAEL BEDNARZ, VENERIO SANTOS, LANE NALEWAJKA, HANK, KOURTNEY HALLMEYER, TERRY DEAN, RN SARAH, HODGE, LIEUTENANT GROTTE,** and **BRENNAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Walls. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Walls, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Walls is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Walls is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  August 19, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file Answers to your Complaint. It will likely take at least **60 days** from the date of this Order to receive Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling and Discovery Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.